# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

BAO HOANG TANG,

          Petitioner,

   v.

TODD BLANCHE, et al.,

          Respondents.

Case No. 5:26-cv-02281-MBK

ORDER GRANTING PETITION FOR HABEAS CORPUS

Boa Hoang Tang, a native and citizen of Vietnam, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Tang immigrated to the United States in 1978 and later became lawful permanent resident. Dkt. 1 at 2. Following convictions for possession of a controlled substance and receipt of stolen property, Mr. Tang was ordered removed from the United States on March 1, 1999. *Id*. He was released on an order of supervision ("OSUP") in 2000 after his removal to Vietnam proved impracticable. *Id*. at 2-3. Since that time, Mr. Tang has remained in the

United States and has fully complied with his conditions of supervision. *Id*. at 3.

On April 23, 2026, Mr. Tang was arrested when he reported as instructed for a regular check-in with Immigration and Customs Enforcement ("ICE"). He was not provided with notice, an interview, or any opportunity to explain why he should not be detained or deported. *Id*.at 3. He was later transferred to the Desert View Annex Detention facility in Adelanto, California, where he remains today. *Id*.

In this habeas action, Mr. Tang claims that his detention violates the immigration laws and due process because the Government has not shown that there is a significant likelihood of his removal to Vietnam in the reasonably foreseeable future. He also argues that the Government failed to follow the proper procedures under 8 C.F.R § 241.13—including notice, an informal interview, and an opportunity to be heard—to revoke his OSUP. Dkt. 1 at 11-13. Based on these alleged violations, he asks the Court to issue a writ of habeas corpus requiring his immediate release from custody. *Id*. at 14.

In their Answer, Respondents state that they "are not presenting an opposition argument at this time." Dkt. 10 at 2. In light of Respondents' position, the Court concludes that Petitioner is entitled to habeas relief. Respondents have failed to demonstrate that there is a reasonable likelihood of Petitioner's removal to Vietnam in the reasonably foreseeable future and, it follows, that his ongoing detention is authorized by 8 U.S.C. § 1231(a). The Court also finds that Respondents violated applicable regulations by revoking Petitioner's OSUP without providing notice or an interview. Accordingly, the Court orders that the Petition be granted, Petitioner be released immediately,

and Respondents be prevented from re-detaining Petitioner without complying with procedures set forth in 8 C.F.R § 241.13.

## I.    DISCUSSION

The Court begins by reviewing the legal and factual background relevant to Petitioner's claims, including the United States' complicated history of repatriations to Vietnam. The Court then addresses Petitioner's claims on the merits. For the reasons that follow, the Court concludes that Petitioner is entitled to release because the Government has not shown a significant likelihood of his removal in the reasonably foreseeable future and because it revoked his OSUP without providing adequate notice, an interview, or an opportunity to be heard.

### A. Legal and Factual Background

#### 1. Detention and Release under Section 1231.

Section 1231 governs the Government's authority to detain non-citizens with final orders of removal. The statute provides that the Government "shall detain" noncitizens during the "removal period." 8 U.S.C. § 1231(a)(2)(A). The "removal period" is defined as beginning on the "latest of the following": "(i) The date the order of removal becomes administratively final"; "(ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "(iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." *Id*. at § 1231(a)(1)(B).

Thereafter, the statute permits—but does not require—the detention of certain noncitizens found inadmissible or removable on specified grounds, "or who have been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal." *Id*. at §

3

1231(a)(6). Such individuals "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." *Id.*

The Supreme Court has construed Section 1231(a)(6) not to permit the "indefinite detention" of noncitizens, which would otherwise pose serious constitutional concerns. *Zadvydas*, 533 U.S. at 690-96. The Court instead interpreted Section 1231(a)(6) to permit detention only where removal is "reasonably foreseeable." *Id.* at 699. To effectuate this limit, the Court found it "practically necessary to recognize some presumptively reasonable period of detention," which it set at six months. *Id.* at 701. "After this 6–month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* Because the statute only authorizes a "reasonable" period of detention to effectuate removal, "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.*

The Government has adopted regulations to implement its authority to detain or release noncitizens under Section 1231(a). 8 C.F.R. § 241.4, titled "Continued detention of inadmissible, criminal, and other [noncitizens] beyond the removal period," sets out "procedures DHS must follow to impose continued detention" beyond the removal period. *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021). 8 C.F.R. § 241.13, titled "Determination of whether there is a significant likelihood of removing a detained [noncitizen] in the reasonably foreseeable future," sets out procedures to implement the statutory limit recognized in *Zadvydas*. *Id.* Sections 241.13(g)(1) and 241.13(h) provide that the Government "shall" release a noncitizen on an "order of supervision" if it determines that their removal is not reasonably foreseeable, unless "there are special circumstances justifying continued detention."

For noncitizens released on an OSUP because their removal proved impracticable, the regulations also specify procedures for the Government to revoke their OSUP and re-detain them. DHS may revoke the noncitizen's OSUP if they violate their conditions of release, 8 C.F.R. § 241.13(i)(1), or "if, on account of changed circumstances, [DHS] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future," 8 C.F.R. § 241.13(i)(2). *See also Hoang v. Santa Cruz*, No. 25-cv-2766-JGB-JC, 2025 WL 3141857, at *3 (C.D. Cal. Oct. 28, 2025) ("[I]f a noncitizen is subject to 8 C.F.R. § 241.13, ICE may only detain them under more limited circumstances than 8 C.F.R. § 241.4(l)...."). Thus, the regulation "requir[es] (1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Nguyen*, 788 F. Supp. 3d at 150 (quoting *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023)).

## 2. Repatriation of Vietnamese Immigrants Ordered Removed from the United States

This case implicates the United States' complex history with Vietnam and the countries' evolving diplomatic agreements over the past few decades. Drawing on the extensive record developed in *Trinh v. Homan*, 466 F. Supp. 3d 1077 (C.D. Cal. 2020), the Court briefly traces that history to provide context for the parties' current dispute about whether Petitioner's removal to Vietnam is reasonably foreseeable.

After the Vietnam War, the North Vietnamese government established the current Socialist Republic of Vietnam ("Vietnam"). Around that time, waves of people from the former Republic of Vietnam (South Vietnam) fled the country to escape political persecution. Under various humanitarian programs, the United States accepted hundreds of thousands of Vietnamese

refugees, including Petitioner. *Id*. at 1083 (citations omitted).

Between the end of the Vietnam War and 2008, Vietnam refused to repatriate any Vietnamese immigrants who had been ordered removed from the United States. In 2008, the United States and Vietnam reached a diplomatic agreement under which Vietnam agreed to start considering repatriation requests for certain Vietnamese immigrants. Specifically, the agreement obligated Vietnam to consider repatriation requests for Vietnamese immigrants who had arrived in the United States after July 12, 1995. The agreement also provided that Vietnamese citizens are not subject to return to Vietnam under this agreement if they arrived in the United States before July 12, 1995. Relying on this provision, Vietnam maintained its policy of non-repatriation for pre-1995 Vietnamese immigrants after signing the 2008 agreement. *Id*. (citations and quotations omitted).

Prior to 2017, ICE maintained that the removal of pre-1995 Vietnamese immigrants was unlikely given Vietnam's consistent refusal to repatriate them. Accordingly, ICE adopted a policy of not detaining pre-1995 Vietnamese immigrants for longer than ninety days after their removal orders became final. After ninety days, ICE generally released them into the community on an OSUP. *Id*. (citations and quotations omitted).

In 2017, ICE entered into negotiations with Vietnam that were aimed at amending the 2008 Agreement and developing a new policy that would allow for pre-1995 Vietnamese immigrants to be repatriated. These negotiations were somewhat successful. Although the 2008 agreement was not officially amended, Vietnamese officials verbally committed to begin considering ICE travel document requests for pre-1995 Vietnamese immigrants on a case-by-case basis, without explicitly committing to accept any of them. *Id*. (citations omitted).

After receiving this verbal commitment in 2017, ICE departed from its longstanding practice of releasing pre-1995 Vietnamese immigrants with final orders of removal after ninety days of detention. Instead, it began detaining them for more than ninety days based on the possibility that Vietnam might issue the requisite travel documents. ICE also began re-detaining some pre-1995 Vietnamese immigrants who had previously been released on OSUPs. *Id.* at 1083-84 (citations omitted).

On August 6, 2018, ICE met with Vietnamese officials again to continue discussions about the status of pre-1995 Vietnamese immigrants. After that meeting, ICE reversed its position again. ICE conceded that, despite Vietnam's verbal commitment to consider travel document requests for pre-1995 immigrants, in general, the removal of these individuals was still not significantly likely. In October 2018, ICE instructed field offices to resume the practice of releasing pre-1995 Vietnamese immigrants within 90 days of a final order of removal. *Id.* at 1084 (citations omitted). Between 2017 and 2019, ICE requested travel documents for pre-1995 Vietnamese immigrants 251 times, but Vietnam granted those requests only 18 times. *Id.* at 1087-88. The Government was forced to release many of those detainees in 2018. *Id.* at 1088.

In 2020, the United States secured a Memorandum of Understanding with Vietnam ("Memorandum"), which created a process through which the Vietnamese government could consider some pre-1995 Vietnamese immigrants for removal. The Memorandum limited consideration to persons meeting certain criteria, but many of these criteria are not publicly available. *See Nguyen v. Scott*, 729 F. Supp. 3d 703, 715 (W.D. Wash. 2025). When an immigrant qualifies, the Memorandum provides only that Vietnam has "discretion whether to issue a travel document," which it exercises "on a case-

by-case basis." *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1993771, at *5 (E.D. Cal. July 16, 2025).

In the post-Memorandum era, Vietnam has overwhelmingly declined to issue travel documents for pre-1995 immigrants. Quarterly reports that ICE agreed to submit as part of the *Trinh* class action settlement showed that between September 2021 and September 2023, only four Vietnamese immigrants who came to the United States before 1995 were given travel documents and deported.[1]

On June 9, 2025, the current administration rescinded ICE's policy of generally finding that pre-1995 Vietnamese nationals were not likely to be removed in the reasonably foreseeable future. *See Nguyen*, 729 F. Supp. 3d at 715.

**B. Respondents Have Not Demonstrated that Petitioner may be Removed in the Reasonably Foreseeable Future**

With this background in mind, the Court now turns to Petitioner's habeas claims, beginning with Petitioner's claim that he is entitled to release because the Government has not demonstrated that his removal is reasonably foreseeable.

**i.    The Government Bears the Burden to Show Petitioner's Removal is Likely in the Reasonably Foreseeable Future**

This Court has previously held, consistent with the weight of authority in this District, that the Government bears the burden to demonstrate that Petitioner's removal is reasonably foreseeable to lawfully revoke his OSUP and re-detain him. *See Trieu v. Mullin*, 5:26-cv-01653-MBK, 2026 WL

---

[1] See Asian Law Caucus, *Resources on Deportation of Vietnamese Immigrants Who Entered the U.S. Before 1995*, (Jul. 15, 2025), available at https://www.asianlawcaucus.org/news-resources/guides-reports/trinh-reports (last visited Apr. 14, 2026) (providing links to the quarterly reports).

1045194, at *5 (C.D. Cal. Apr. 17, 2026); *Truong v. Mullin*, 2:26-cv-03546-MBK, 2026 WL 1047908, at *6 (C.D. Cal. Apr. 15, 2026). *See also Nguyen v. Marin*, 5:26-cv-01130-JFW-MAR, 2026 WL 822535, at *3 (C.D. Cal. Mar. 20, 2026); *Truong v. Lyons*, 5:26-cv-00021-AS, 2026 WL 855150, at *6 (C.D. Cal. Mar. 20, 2026); *Pham v. Marin*, 5:26-cv-00785-MRA-SP, 2026 WL 712946, at *4 (C.D. Cal. Mar. 11, 2026); *Espada v. Doe*, No. 5:25-cv-02983-JWH-KES, 2026 WL 181539, at *3-4 (C.D. Cal. Jan. 20, 2026), *adopted*, 2026 WL 192150 (C.D. Cal. Jan. 23, 2026); *Bui v. Noem*, No. 5:25-cv-03370-RGK-AJR, 2025 WL 4061564, at *3 (C.D. Cal. Dec. 30, 2025); *Luu v. Bowen*, No. 5:25-CV-03145-MEMF-SP, 2025 WL 3552298, at *6 (C.D. Cal. Dec. 11, 2025); *Nazarian v. Noem*, No. 25-cv-02694-KK-ADS, 2025 WL 3236209, at *5, (C.D. Cal. Nov. 3, 2025); *El Abed v. Noem*, No. 25-cv-02361-FWS-JDE, 2025 WL 3691910, at *4 (C.D. Cal. Oct. 28, 2025).

Section 241.13(i)(2) authorizes the Government to revoke a noncitizen's OSUP "if, on account of changed circumstances, the Service determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." While the regulation does not expressly state that the Government bears the burden to show a significant likelihood of removal, the legal context in which it was adopted and principles of statutory interpretation compel that result.

As discussed above, Section 241.13 was promulgated to implement the Supreme Court's decision in *Zadvydas*. *See Johnson*, 594 U.S. at 529. In *Zadvydas*, the Supreme Court instructed that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." 533 U.S. at 701. If the Government cannot rebut the noncitizen's showing, then the noncitizen's detention is "no longer

9

authorized by statute" and they must be released "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 699-700.

Section 241.13 codifies this burden-shifting framework. It first provides procedures for DHS to determine whether removal is reasonably foreseeable and, if not, to authorize the noncitizen's release on an OSUP. *See* 8 C.F.R. § 241.13(d)-(g). It then provides authority for DHS to revoke a noncitizen's OSUP and re-detain them where they violated the terms of their release or "changed circumstances" establish that their removal is now reasonably foreseeable. *Id.* § 241.13(i)(1)-(3).

The provision authorizing revocation of an OSUP based on "changed circumstances," Section 241.13(i)(2), therefore only applies where the noncitizen has already been released based on DHS's determination that their removal is not reasonably foreseeable under the *Zadvydas* burden-shifting framework. *See* 8 C.F.R. § 241.13(i)(2) (authorizing revocation of "release under this section"); *id.* at § 241.13(i) (providing for conditions of release for noncitizens released upon a "determination" that their "removal is not significantly likely in the reasonably foreseeable future"). This means that noncitizens subject to revocation of their OSUP have already met their burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. To be consistent with *Zadvydas*, then, Section 241.13(i)(2) must be construed to place the burden DHS to "rebut" that showing by demonstrating there is a significant likelihood of the noncitizen's removal in the reasonably foreseeable future "on account of changed circumstances."

To the extent there is any ambiguity, principles of statutory construction support this reading of the regulation. "Absent specific statutory

or regulatory language on the allocation of the burden of proof (as is the case in 8 C.F.R. § 241.13(i)(2)), the Court is guided by the 'default rule' that the burden falls on the party who 'generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion.'" *Roble v. Bondi*, 803 F. Supp. 3d 766, 773 (D. Minn. 2025) (quoting *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005)).

This reading also avoids the serious constitutional concerns posed by the Government's position. *Zadvydas* construed Section 1231(a) not to authorize detention where removal is not reasonably foreseeable because a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. As multiple courts have observed, the Government's reading of Section 241.13(i)(2) would raise similar concerns by placing the burden on the noncitizen to demonstrate they should be released when the Government made the unilateral determination that the noncitizen's prior showing—that their removal was not reasonably foreseeable and therefore their detention potentially indefinite—was no longer sufficient. *See Luu*, 2025 WL 3552298, at *6 ("The Supreme Court's concern that indefinite or prolonged detention would be unconstitutional applies equally to a single prolonged detention as it does to a detention that is broken up into shorter periods. To apply *Zadvydas* in the manner Respondents propose would suggest that Respondents could detain an individual for six months, release them, redetain them just outside the gates of the detention facility, and redetain them for another six months, and do this repeatedly without ever having to comply with its burden under *Zadvydas*."); *Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) ("Imposing the burden of proof on the alien each time he is re-detained would

11

lead to an unjust result and serious due process implications."). Construing Section 241.13(i)(2) to place the burden on the Government is not only most faithful to the text and its context, but would also avoid these serious constitutional concerns. *See generally Flores-Chavez v. Ashcroft*, 362 F.3d 1150, 1162 (9th Cir. 2004) (applying canon of constitutional avoidance to construe regulation).

The Court therefore concludes that "'[t]he burden-shifting framework from *Zadvydas* does not apply' where the petitioner has already been 'issued a final order of removal, detained, and subsequently released on an' OSUP." *Espada*, 2026 WL 181539, at *5 (quoting *Yan-Ling X. v. Lyons*, No. 25-cv-01412-KES-CDB, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025)). "Under section 241.13(i)(2), when ICE revokes release to effectual removal, it is *ICE's burden* to show a significant likelihood that the alien may be removed." *Id*. (cleaned up) (emphasis in original).

### ii. Respondents Have Not Met Their Burden

Because Respondents concede that they are "not presenting an opposition at this time," (Dkt. 10 at 2), they present no evidence or argument to meet their burden under the regulation to demonstrate "changed circumstances" such that Petitioner's removal is reasonably foreseeable and his ongoing detention is authorized. Given the low rates at which Vietnam issues travel documents for pre-1995 immigrants to the United States, the non-public availability of the criteria Vietnam uses to makes its decisions on repatriation of such individuals, and the fact that Respondents have not requested travel documents for Petitioner, the Court cannot conclude that Respondents have met their burden under 8 C.F.R. § 241.13(i)(2).

### C. Respondents Did Not Comply with Procedures to Revoke Petitioner's OSUP

Petitioner also alleges that Respondents failed to follow the required procedures for revoking his OSUP—namely notice, an interview, and an opportunity to contest the basis for revocation. Dkt. 1 at 12.

When the Government revokes a noncitizen's OSUP based on its determination that there is a significant likelihood that a noncitizen may be removed in the reasonably foreseeable future, the noncitizen must be: (1) "notified of the reasons for revocation of his or her release"; and (2) given "an initial informal interview promptly after his or her return to [ ] custody to afford the[m] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release." *Id*. Section 241.13(i)(3) therefore "require[s], at a minimum, that ICE articulate a meaningful, individualized basis for revocation sufficient to give the noncitizen notice of the grounds for re-detention and an opportunity to respond." *Vo v. Lyons*, No. 1:25-CV-533-JL-TSM, 2026 WL 323133, at *4 (D.N.H. Jan. 27, 2026).

In their Answer, Respondents do not dispute that Petitioner was not afforded the notice, interview, and opportunity to be heard required by Section 241.13(i)(3). A "growing number of courts . . . have found that the government's failure to follow its release revocation procedures renders the re-detention unlawful and requires release." *Nguyen v. Noem*, No. 8:25-cv-02654-HDV-DSR, 2025 WL 3898489, at *7 (C.D. Cal. Dec. 19, 2025); *Constantinovici v. Bondi*, 806 F. Supp. 3d 1155, 1164 (S.D. Cal. 2025) ("Numerous district courts, including courts in the Ninth Circuit, have determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered.") (collecting cases).

13

The Court agrees that release is an appropriate remedy for Respondents' regulatory violations. The purpose of the regulations—notice, an interview, and an opportunity to be heard—is to ensure that the Government does not wrongly revoke a noncitizen's OSUP and deprive them of their liberty. Because Petitioner has been prejudiced by the denial of these protections, Petitioner should be returned to the "status quo," which "is Petitioner's release on his [] OSUP before his current re-detention." *Nazarian*, 2025 WL 3236209, at *7 (C.D. Cal. Nov. 3, 2025); *Cruz v. Rios, et al.*, No. 26-01374-cv-MWF-DSR, 2026 WL 973367, at *4 (C.D. Cal. Apr. 8, 2026) (same); *Bolandi v. Noem*, No. 5:26-CV-00628-MCS-AGR, 2026 WL 485764, at *3 (C.D. Cal. Feb. 19, 2026); *Hoang v. Noem*, No. 25-cv-3177-JLS-RAO, 2026 WL 89319, at *5 (C.D. Cal. Jan. 12, 2026) (same). *See also Esmail*, 2025 WL 3030590, at *9 ("Providing Petitioner an interview *ex post facto*, while keeping him detained in ICE's custody, would not remedy the apparent constitutional violation that Petitioner has suffered in being re-detained without any measure of due process.").

## II.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Respondents to immediately release Petitioner, subject to the conditions of his prior OSUP, and preventing Petitioner's re-detention unless Respondents demonstrate changed circumstances that his removal is reasonably foreseeable and provide him adequate notice, an interview, and an opportunity to be heard; (3) Respondents shall return any confiscated property to Petitioner, including, but not limited to, any photo identification and/or employment authorization card; and (4) Respondents shall file a status report

14

within seven (7) days to confirm that Petitioner has been released from custody consistent with this order.

Dated: May 8, 2026

_____
HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

15